UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.: 25-96** |
| v. | * | **SECTION: DUTY MAG.** |
| **JOSUE ALEJANDRO GUERRERO** | * | |

\* \* \*

**UNITED STATES' MEMORANDUM REGARDING**
**TITLE 8, UNITED STATES CODE, SECTION 1306(a)**

More than 80 years ago, Congress passed, and President Franklin D. Roosevelt signed into law, the Alien Registration Act of 1940 (also known as the Smith Act). Years later, Congress incorporated the registration and fingerprinting requirements of this Act into the Immigration and Nationality Act of 1952 and codified the requirements in 8 U.S.C. §§ 1301–1306. Since that time, the law has required, with some exceptions, every alien now or hereafter in the United States who is fourteen years of age or older, has not been registered and fingerprinted under the Alien Registration Act of 1940, and remains in the United States for thirty days or longer to apply for registration and to be fingerprinted before the expiration of such thirty days. *See* 8 U.S.C. § 1302(a). The willful failure or refusal to make such an application or be fingerprinted is a criminal misdemeanor punishable by up to six months in prison. 8 U.S.C. § 1306(a). Since their codification in 1952, these laws have not been repealed, and they have not been held unconstitutional.

Josue Alejandro Guerrero (Guerrero), an alien illegally in the United States, was encountered by Immigration and Customs Enforcement (ICE) on April 11, 2025. Although he had been in the United States for at least thirty days, he had not applied for registration or fingerprinting as required by longstanding law. As demonstrated below, his failure to do so was willful.

Accordingly, and pursuant to this Court's April 29, 2025 Order (Rec. Doc. 3), the United States respectfully submits this memorandum in anticipation of the May 13, 2025 preliminary hearing in this matter and in support of a finding of probable cause that Guerrero violated Title 8, United States Code, Section 1306.

I.     BACKGROUND

Guerrero was encountered by Immigration and Customs Enforcement (ICE) on April 11, 2025, and determined to be illegally present in the United States. *See* Department of Homeland Security (DHS) form I-213, attached as Exhibit A. Guerrero admitted to being a citizen of Honduras, illegally crossing the border in Texas sometime in 2022, and not registering as an alien since his illegal entry. *See* Record of Sworn Statement, attached as Exhibit B.[1] Deportation Officers subsequently confirmed that there is no record of Guerrero making a lawful entry through one of the approximately 57 legal ports of entry along the Mexican border and no record of Guerrero registering as an alien within thirty days of his illegal entry in 2022. *See* Deportation Officer Affidavit, attached as Exhibit C.

On April 21, 2025, the defendant was charged with failing to register as an alien as required by 8 U.S.C. § 1302(a)[2], in violation of 8 U.S.C. § 1306(a).

II.    DEFENDANT'S DUTY TO COMPLY WITH 8 U.S.C. § 1302 EXISTED FOR UNREGISTERED ALIENS PRIOR TO HIS ENCOUNTER WITH ICE AGENTS

The federal government has broad authority to regulate immigration, *see Toll v. Moreno*, 458 U.S. 1, 10–11 (1982), which has included the conditions of entry, movement within the

---

[1] The defendant ultimately refused to sign his statement.

[2] "It shall be the duty of every alien now or hereafter in the United States, who (1) is fourteen years of age or older, (2) has not been registered and fingerprinted under section 1201(b) of this title or section 30 or 31 of the Alien Registration Act, 1940, and (3) remains in the United States for thirty days or longer, to apply for registration and to be fingerprinted before the expiration of such thirty days." § 1302(a).

2

country, and regulation of conduct before naturalization. *See Mathews v. Diaz*, 426 U.S. 67, 84 (1976) ("[I]t is the business of the political branches of the Federal Government, rather than that of either the States or the Federal Judiciary, to regulate conditions of entry and residence of aliens."). The Alien Registration Act of 1940, also known as the Smith Act, was enacted into law in June 1940 and put a duty on aliens to register and to be fingerprinted. *See* Alien Registration Form and Evidence of Registration, 90 Fed. Reg. at 47, 11793, 11796 (Mar. 12, 2025) (to be codified at 8 C.F.R. pt.264), attached as Exhibit D.[3] Congress later incorporated the registration and fingerprinting requirements into the Immigration and Nationality Act of 1952 and codified the requirements in 8 U.S.C. §§ 1301–1306. *Id*. at 11793.[4]

Pursuant to 8 U.S.C. § 1302, it is the legal obligation of unregistered aliens (or previously registered aliens who turn 14 years old) who are in the United States for 30 days or longer to apply for registration and fingerprinting. Over time, DHS has designated several prescribed forms as registration forms or showing evidence of registration. *See* Alien Registration Form and Evidence of Registration, 90 Fed. Reg. at 47, 11794–97; *see also* 8 C.F.R. § 264.1(a)–(b). Twenty

---

[3] The Smith Act was separate from "enemy alien registration" under the Alien Enemies Act of 1798, s*ee* 50 U.S.C. § 21–24 (codifying Alien Enemies Act), which granted authority to summarily detain and deport noncitizens from enemy countries and was invoked in World War II as the legal authority for interning noncitizens of Japanese, German, and Italian descent. *See Jacobs v. Barr*, 959 F.2d 313, 320–21 (D.C. 1992).

[4] While enacted in 1940, Congress has not repealed the statutory requirements, instead amending the statutory language on multiple occasions, and § 1306 continues to be a federal crime prosecuted along with other registration violations. *See* 8 U.S.C. § 1302 (showing amendments in 1986, 1988, and 1994); 8 U.S.C. § 1306 (showing amendment in 1996); *see also United States v. Sacco*, 428 F.2d 264 (9th Cir. 1970) (affirming conviction for failure to register under § 1306(a)); *United States v. Campos-Serrano*, 404 U.S. 293, 300–01 (1971) (discussing punishment for counterfeiting alien registration receipt card under § 1306(d)); *Martinez-Medina v. Holder*, 673 F.3d 1029, 1036 (9th Cir. 2011) (recognizing that "an alien's willful failure to register his presence in the United States when required to do so is a crime."); *United States v. Mendez-Lopez*, 528 F. Supp. 972, 973–74 (N.D. Ok. 1981) (charging defendant with 8 U.S.C. § 1304 for failure to have in his personal possession any certificate of alien registration receipt card); *United States v. Claudio-Becerra*, PO 08-2305, 2008 WL 11451356, *1 (D. N.M. 2008) (charging defendant with failure to register).

mechanisms, either forms or evidence of registration, have been codified to comply with the registration requirement set forth in § 1302(a): I-67 Inspection Record—Hungarian refugees; I-94 Arrival-Departure Record (aliens claiming entry prior to July 1, 1924); I-95 Crewmen's Landing Permit; I-181 Memorandum of Creation of Record of Lawful Permanent Residence; I-485 Application for Status as Permanent Resident; I-590 Registration for Classification as Refugee; I-687 Application for Status as a Temporary Resident; I-691 Notice of Approval for Status as a Temporary Resident; I-698 Application to Adjust Status from Temporary to Permanent Resident; I-700 Application for Status as a Temporary Resident; I-817 Application for Voluntary Departure under the Family Unity Act, I-184 Alien Crewman Landing Permit and Identification Card; I-185 Nonresident Alien Canadian Border Crossing Card; I-186 Nonresident Alien Mexican Border Crossing Card; I-221 Order to Show Cause and Notice of Hearing (aliens against whom deportation proceedings are instituted); I-221S Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (aliens against whom deportation proceedings are instituted); I-551 Permanent Resident Card; I-766 Employment Authorization Document; I-862 Notice to Appear (aliens against whom removal proceedings are being instituted); and valid nonimmigrant DHS admission or parole stamp in a foreign passport. *See* 8 C.F.R. § 264.1(a)–(b); *see also* Alien Registration Form and Evidence of Registration, 90 Fed. Reg. at 47, 11794–97. Thus, many aliens in the United States already are registered, as required by law, through use of these mechanisms.

On January 20, 2025, the President issued the "Protecting the American People Against Invasion" Executive Order, which directed DHS to ensure that aliens comply with their long-established duty to register with the government under 8 U.S.C. § 1302 and to ensure that failure to comply would be treated as a civil and criminal enforcement priority. *See* Exec. Order No. 14159, 90 C.F.R. 18, 8443 (Jan. 20, 2025). On February 25, 2025, the Secretary of Homeland

Security announced DHS would fully enforce the Immigration and Nationality Act (INA), including an alien's failure to register, explaining in a press release that failure to do so could result in a fine, imprisonment, or both. *See* https://www.dhs.gov/news/2025/02/25/secretary-noem-announces-agency-will-enforce-laws-penalize-aliens-country-illegally (last visited May 6, 2025). This announcement was part of a broader national and international ad campaign, which included targeted ads to reach illegal aliens in the interior of the United States. *See* https://www.dhs.gov/news/2025/02/17/dhs-announces-ad-campaign-warning-illegal-aliens-self-deport-and-stay-out (last visited May 6, 2025).

In addition to the prescribed forms of registration provided for in 8 C.F.R. § 264.1(a)–(b), U.S. Citizenship and Immigration Services (USCIS) created a new registration form, G-325R, Biometric Information (Registration) that unregistered aliens could file online to comply with § 1302(a). *See* https://www.uscis.gov/alienregistration (last visited May 6, 2025). On February 25, 2025, in a DHS press release, aliens were directed to register using online Form G-325R at USCIS.gov. *See* https://www.dhs.gov/news/2025/02/25/secretary-noem-announces-agency-will-enforce-laws-penalize-aliens-country-illegally.[5]

On March 12, 2025, DHS published the interim final rule (IFR) that amended DHS regulations to designate G-325R as an additional registration method for unregistered aliens to comply with the statutory alien registration and fingerprinting provisions of § 1302. *See* Alien Registration Form and Evidence of Registration, 90 Fed. Reg. 47, at 11796 (Mar. 12, 2025) ("The IFR merely adds another method . . . for compliance with existing statutory registration requirements."). The IFR did not change the legal requirements of § 1302(a), but provided an

---

[5] Prior to form G-325R, aliens were able to create a USCIS online account to file other immigration forms online and track their immigration proceedings. *See also* https://www.uscis.gov/file-online/how-to-create-a-uscis-online-account (last visited May 6, 2025); https://www.uscis.gov/file-online/benefits-of-a-uscis-online-account (last visited May 6, 2025).

additional method in which an unregistered alien could comply. *Id*. at 11793, 11796 ("This IFR fills the gaps in the regulatory regime by prescribing a registration form available to all aliens regardless of their status, in addition to the other forms already listed."); *see also Coalition for Humane Immigrant Rights v. DHS*, No. 1:25-cv-00943, 2025 WL 1078776, *1–2 (D.C. Dist. Ct. Apr. 10, 2025) (explaining historical mechanisms in which aliens could register). "The rule seeks to better ensure that all aliens in the United States comply with such requirements. The rule does not impose any new registration or fingerprinting obligations separate from the obligations already contained in the INA." Alien Registration Form and Evidence of Registration, 90 Fed. Reg. at 47, 11796–97. Additionally, "[a]n alien who has previously registered consistent with 8 C.F.R. § 264.1(a), or an alien who has evidence of registration consistent with 8 C.F.R. § 264.1(b), need not register again, although such an alien is subject to ongoing change of address reporting requirements." *Id*. at 11796.

Following a 30-day comment period (as to whether a $30 fee should be charged, *id*. at 11793, 11796), the IFR became effective on April 11, 2025. However, the IFR provided that aliens "may register using the revised form G-325R Biographic Information (Registration) immediately." *Id*. at 11793. On April 11, 2025, DHS Secretary Noem reminded all noncitizens, regardless of status, that if they were present in the United States for 30 days or more as of April 11, 2025, without registration evidence, to register immediately. *See* https://www.dhs.gov/news/2025/04/11/secretary-noem-reminds-foreign-nationals-register-or-face-legal-penalties (last visited May 6, 2025). The Office of General Counsel at USCIS has confirmed online Form G-325R was available on February 25, 2025. Accordingly, unregistered aliens could create a USCIS online account and complete the online G-325R registration form more than thirty days prior to the IFR effective date.

Form G-325R did not activate the registration requirements under § 1302; those requirements have been in effect for decades. The recent IFR and Form G-325R simply provided an additional method—among others—for aliens to register. The advent of G-325R does not prevent charges or bar a finding of probable cause for violation of § 1306(a).

## III.    THE ELEMENTS OF § 1306(a) - WILLFULLY

8 U.S.C. 1306(a) provides:

> Any alien required to apply for registration and to be fingerprinted in the United States who willfully fails or refuses to make such application or to be fingerprinted, and any parent or legal guardian required to apply for the registration of any alien who willfully fails or refuses to file application for the registration of such alien shall be guilty of a misdemeanor and shall, upon conviction thereof, be fined not to exceed $1,000 or be imprisoned not more than six months, or both.

Considering this, the elements of the offense are: 1) that the defendant is an alien at least fourteen years of age, 2) that he was required to register and be fingerprinted, and 3) that he willfully failed or refused to register or be fingerprinted. *See* 8 U.S.C. §§ 1302(a), 1306(a). As there is no dispute that the defendant is an alien at least fourteen years old, and that he was required to register as detailed above, the issue before the Court is whether the defendant acted willfully.

"The word 'willfully' is sometimes said to be a word of many meanings whose construction is often dependent on the context in which it appears." *Bryan v. United States*, 524 U.S. 184, 191 (1998) (internal quotation marks and citation omitted); *see also United States v. Arditti*, 955 F.2d 331, 340 (5th Cir. 1992) (stating that the meaning of "willfully" varies depending upon the context). "As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.' In other words, in order to establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Bryan*, 524 U.S. at 191–92 (internal quotation marks and citation omitted).

7

The willfulness requirement does not usually carve out an exception to the traditional rule that ignorance of the law is no excuse. In *Bryan*, the Supreme Court addressed whether the term "willfully" in federal firearms licensing violations required proof that the defendant knew that his conduct was unlawful, or whether it also required proof that the defendant knew of the specific federal licensing requirements. *Id*. at 193–95. The Court distinguished cases involving highly technical statutes (such as the tax violations in *Cheek v. United States*, 498 U.S. 192 (1991)), that present a danger of ensnaring individuals engaged in apparently innocent conduct from those that do not. *Id*. at 194–95. For those that do not, ignorance of the law is no excuse, and the defendant need only have acted with a bad purpose. *Id*. at 191.

The Fifth Circuit has recognized that all the various attempts at defining "willful" have a consistent foundation: "that the defendant must have acted intentionally—not by accident or mistake." *United States v. Kay*, 513 F.3d 432, 447 (5th Cir. 2007) ("The first and most basic interpretation of criminal willfulness is that committing an act, and having knowledge of the act, is criminal willfulness—provided that the actions fell within the category of actions defined as illegal under the applicable statute. In these cases, the defendant need not have known of the specific terms of the statute or even the existence of the statute. The defendant's knowledge that he committed the act is sufficient.").[6] Contextually, illegally entering the United States—and not informing immigration officials—is not a highly technical matter. Here, it involves sneaking

---

[6] The Fifth Circuit also commented on two other levels of "willfulness": "The second and 'intermediate' level of criminal willfulness requires the defendant to have known that his actions were in some way unlawful. Again, he need not have known of the specific statute, but rather he must have acted with knowledge that he was doing a 'bad' act under the general rules of law. Under this intermediate level of criminal common law willfulness, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.' The strictest level of interpretation of criminal willfulness requires that the defendant knew the terms of the statute and that he was violating the statute. The courts have reserved this category to limited types of statutory violations involving 'complex' statutes – namely those government federal tax law and antistructuring transactions." *Kay*, 513 F.3d at 447–48.

across the southern border, avoiding approximately 57 legal points of entry, and avoiding immigration authorities (both at the initial entry and by virtue of failing to register), all with the purpose of concealing one's presence in the United States.

The government has a compelling interest in the enforcement of its border control laws. *See United States v. Merkt*, 794 F.2d 950, 956 (5th Cir. 1986) ("[C]ontrary to appellants' assertions, there is a compelling state interest in the government's uniform enforcement of border control laws."); *see also United States v. Marshall*, 878 F.2d 161, 163 (5th Cir. 1989) ("The government has a significant interest in controlling the illegal entry of aliens[.]]"). It also has "clearly expressed more than a 'peripheral concern' with the entry, movement, and residence of aliens within the United States[.]" *Georgia Latino All. for Hum. Rts. v. Governor of Georgia*, 691 F.3d 1250, 1264 (11th Cir. 2012). Actions like those the defendant acknowledged serve to upset the government's clear interest in enforcing its immigration laws, and it evinces that his failure to register was willful.[7]

## IV.    CONCLUSION

The Supreme Court's concern of "ensnaring individuals engaged in apparently innocent conduct" is not present in this matter. The defendant acted with bad purpose when he snuck across the border, avoided a multitude of ways to enter the country legally, and concealed himself from

---

[7] The Magistrate Judge Memorandum Opinion from the District of New Mexico provided by defense incorrectly applies the strictest standard of willfulness. *See United States v. Claudio-Becerra*, 2008 WL 11451346, *3 (D. N.M. August 28, 2008) (holding that the government must show that the defendant has "knowledge of his duty to apply for registration and be fingerprinted under Section 1302(a)."). Among other cases holding that the defendant must have specific knowledge of a legal duty, the Magistrate Judge cited *Ratzlaf v. United States*, 510 U.S. 135, 149 (1994)—a case involving complex antistructuring transactions distinguished by the Fifth Circuit in *Kay* (*see* fn. 6, *supra*) and the Supreme Court in *Bryan* as having limited application for complex statutes. *Bryan*, 524 U.S. 184, 194–95 (declining to apply the stricter *Ratzlaf* standard in firearms licensing violations that would carve out exception to traditional rule that ignorance of the law is no excuse). The Magistrate Judge, however, did not address these varying levels of willfulness or the traditional rule barring ignorance of the law, and the Judge's order conflicts with the Fifth Circuit's reasoning in *Kay*. *See Claudio-Becerra*, 2008 WL 11451346, at *1–4.

detection by immigration authorities. If he did not "act with knowledge that his conduct was unlawful," there would be no reason for such subterfuge. In any event, the IFR did not change the legal requirements of § 1302 and provided only an additional method for the defendant to register, which was available to him more than thirty days prior to his arrest date. For these reasons, probable cause exists demonstrating the defendant willfully failed to apply for registration.

Respectfully submitted,

MICHAEL M. SIMPSON
ACTING UNITED STATES ATTORNEY

*s/ G. Dall Kammer*
G. DALL KAMMER (26948)
KEVIN G. BOITMANN
MEGAN ROBERTS
RICK VETERS
Assistant United States Attorneys
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3168
Email: dall.kammer@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

*s/ G. Dall Kammer*
G. DALL KAMMER
Assistant United States Attorney